# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. TRAVIS KIRO, <br><br> Plaintiff, <br><br> v. <br><br> JIAHERB, INC., <br><br> Defendant. | CV 14-2484-RSWL-PLAx <br><br> **ORDER re: Relator's Application to File First Amended Complaint** [63]; **Relator's Motion for Partial Summary Judgment** [67]; **Defendant's Motion for Judgment on the Pleadings** [68] |

Currently before the Court is Relator Travis Kiro's ("Relator") Application for Leave to File First Amended Complaint [63]; Relator's Motion for Partial Summary Judgment [67]; and Defendant's Motion for Judgment on the Pleadings [68].  Having reviewed all papers submitted pertaining to the Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** Relator's Application for Leave to File First Amended Complaint;

1

**DENIES** Relator's Motion for Partial Summary Judgment; and **DENIES as MOOT** Defendant's Motion for Judgment on the Pleadings.

## I. BACKGROUND

### A.  Factual Background

This case arises out of a *qui tam* action brought by Relator on behalf of himself in the name of the United States Government ("the Government") for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. Compl., ECF No. 1.  The Government declined to intervene [22].

Relator is currently a resident of Texas, but at the time of the acts described in the Complaint, was a resident of Los Angeles, California.  Compl. ¶ 7. Relator brings this suit on behalf of the Government, inclusive of the United States Department of Homeland Security, and Bureau of Customs & Border Protection ("CBP"), pursuant to 31 U.S.C. § 3730(b).  Id. ¶ 8. Defendant Jiaherb, Inc. ("Defendant") is a New Jersey corporation which does business in California.  Id. ¶ 11.  Defendant began its United States operations in early 2008 and, together with its Chinese parent company, Shaanxi Jiahe Phytochem Co., Ltd. ("Shaanxi"), imports Chinese herbal extracts to the nutraceutical, pharmaceutical, cosmetic, and food & beverage industries.  Id. ¶ 13.  For approximately seven months from January through July 2012, Relator worked as an Account Manager in Defendant's West Coast office.  Id.

¶ 9.

Under United States laws and regulations relating to the payment of customs duties, when a shipment reaches the United States, the importer of record is required to complete and file certain customs entry documents with CBP, including CBP Form 7501 and a corresponding commercial invoice. Id. ¶ 16. Form 7501 lists the various product items included in a shipment, the quantity of each, the price per unit, the tariff classification, and a calculation of the duties owed by the importer. Declaration of John Kinn ("Kinn Decl.") ¶¶ 14-15, ECF No. 78; Ex. 19, Sample 7501 Form, ECF No. 80-12. Form 7501 requires that the importer of record or its authorized agent swear under oath that:

> the merchandise was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoices are true OR was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoices as to value or price are true . . . that the statements in the documents herein filed fully disclose to the best of [their] knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed.

Id. ¶ 17. The corresponding commercial invoice is required to set forth the purchase price of each item in the currency of the purchase, and if the merchandise is shipped in pursuance to a purchase or an agreement to purchase. Id. ¶ 18.

Relator alleges that from at least as early as 2008, and continuing through to the present, Defendant, in conjunction with Shaanxi, has participated in a scheme to evade payment of appropriate United States import duties in connection with the import of Defendant's herbal supplements.  Id. ¶ 19.  The alleged scheme involves the use of false labels and the filing of false 7501 forms and invoices fraudulently understating the transaction value of the goods being imported.  Id. ¶¶ 20-29.  According to Relator's allegations, once the duties were paid and the products were cleared by customs, the products were sent to one of Defendant's various warehouses, and then Defendant's New Jersey office sent emails referred to as "relabeling requests" to Defendant personnel at the warehouses.  Id. ¶ 40.  The "relabeling request" emails attached the proper labels for the products.  Id. ¶ 41. Relator alleges that the California office replaced the fraudulent labels with the new labels sent via email from New Jersey.  Id. ¶ 42.  Relator alleges that the only function of the fraudulent invoices and 7501 forms is to deceive CBP and thereby reduce Defendant's import duties.  Id. ¶ 43.  Relator claims he has direct, personal knowledge of the scheme because through his employment, he personally saw the relabeling at the West Coast locations.  Id. ¶ 59.

///

///

**B.** **Procedural Background**

Relator filed his Complaint on April 2, 2014 [1] alleging violations of FCA. On October 14, 2016, the Government declined to intervene [22]. On April 18, 2019, Relator filed the instant Application to File a First Amended Complaint ("FAC") [63]. Defendant timely opposed [69] and Relator timely replied [75]. On April 26, 2019 Relator filed the instant Motion for Partial Summary Judgment as to Liability [67]. That same day, Defendant filed a Motion for Judgment on the Pleadings [68]. Both parties timely opposed [74, 77], and timely replied [81, 82] to the Motions.

## II. DISCUSSION

**A.** **Legal Standard**

1. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate "when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." Ventress v. Japan Airlines, 486 F.3d 1111, 1114 (9th Cir. 2007) (quoting Fajardo v. Cty. of L.A., 179 F.3d 698, 699 (9th Cir. 1999)). While the allegations of the non-moving party must be accepted as true, any allegations made by the moving party that have been denied or contradicted are assumed to be false. MacDonald v. Grace Church

_Seattle_, 457 F.3d 1079, 1081 (9th Cir. 2006); _Hal Roach_ _Studios v. Richard Feiner & Co._, 896 F.2d 1542, 1550 (9th Cir. 1989) (citing _Doleman v. Meiji Mut. Life Ins._ _Co._, 727 F.2d 1480, 1482 (9th Cir. 1984)). The facts are viewed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in favor of that party. _Living Designs, Inc. v._ _E.I. DuPont de Nemours & Co._, 431 F.3d 353, 360 (9th Cir. 2005). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." _Turner v. Cook_, 362 F.3d 1219, 1225 (9th Cir. 2004) (quoting _Swierkiewicz v. Sorema N.A._, 534 U.S. 506, 514 (2002)).

"[J]udgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." _Hal Roach Studios_, 896 F.2d at 1550 (citing Fed. R. Civ. P. 12(c)). However, the court may consider facts subject to judicial notice. _Heliotrope Gen., Inc. v. Ford Motor Co._, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

2. <u>Partial Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" for purposes of

summary judgment if it might affect the outcome of the suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the nonmovant. <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1328-29 (9th Cir. 1983). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. <u>Anderson</u>, 106 S. Ct. at 2513.

Where the nonmovant bears the burden of proof at trial, the movant need only prove that there is no evidence to support the nonmovant's case. <u>In re Oracle Corp. Secs. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010). If the movant satisfies this burden, the burden then shifts to the nonmovant to produce admissible evidence showing a triable issue of fact. <u>Id.</u>; <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000); <u>see also</u> <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 119 S. Ct. 1597, 1603-04 (1999) (quoting <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548 (1986)).

Federal Rule of Civil Procedure 56 authorizes courts to grant partial summary judgment to limit the issues to be tried in a case. <u>State Farm Fire & Cas. Co. v. Geary</u>, 699 F. Supp. 756, 759 (N.D. Cal. 1987)

(citing <u>Lies v. Farrell Lines, Inc.</u>, 641 F.2d 765, 769 n.3 (9th Cir. 1981)); <u>see</u>, <u>e.g.</u>, <u>White v. Lee</u>, 227 F.3d 1214, 1240 (9th Cir. 2000)("[A] court may award a partial summary judgment that decides only [the] issue [of liability]."). Absent special circumstances, partial summary judgment is not appealable prior to the entry of a final judgment because such orders do not dispose of all claims or end the litigation on the merits. <u>Williamson v. UNUM Life Ins. Co. of Am.</u>, 160 F.3d 1247, 1250 (9th Cir. 1998) (citations omitted).

**B.** **Discussion**

    1. <u>Relator's Motion to File FAC</u>

Relator seeks leave to file an FAC alleging a new theory of liability under 31 U.S.C. § 3729(a)(1)(G). Specifically, Relator seeks to incorporate a theory under the "Seller Relationship Issue," alleging that in submitting the 7501 Forms to CBP, Defendant misrepresented that it was not related to the seller, when in fact the seller is Defendant's parent company, Shaanxi. Relator's Appl. to File FAC ("FAC Appl.") 2:6-14, ECF No. 63-1.

The Federal Rules of Civil Procedure ("Rule") state that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" <u>Leadsinger, Inc. v. BMG Music Pub.</u>, 512 F.3d 522, 532 (9th Cir. 2008) (quoting <u>Forman v. Davis</u>, 83 S. Ct. 227, 230 (1962)). Neither party argues that Relator brings this Motion in bad faith, and Relator has not previously amended his Complaint.

   a. *Undue Delay*

   Relator filed his initial Complaint on April 2, 2014. Relator contends that he first learned of this new theory of liability in June 2017, because that was when Defendant began producing inconsistent 7501 Forms during discovery, and Relator discovered that on some forms Defendant indicated it was related to the seller, and on some forms it indicated it was not related. FAC Appl. at 4:4-19. Despite discovering this in 2017, Relator waited another near two years before requesting leave to amend to incorporate this new theory. Other than arguing that this time was spent reviewing the documents, many of which had to be translated from Chinese, Relator offers no other explanation for such a long delay. Rel.'s Reply ISO FAC Appl. ("FAC Reply") 2:2-17, ECF No. 75. While the Court acknowledges time is needed to review documents, the Court finds that nearly two years from first discovering the relevant 7501 forms is an unreasonable delay. <u>See</u> <u>AmerisourceBergen Corp v. Dialysist West, Inc.</u>, 465

F.3d 946, 953 (9th Cir. 2006) (citing Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 799 (9th Cir. 1991) ("We have held that an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable."). "Undue delay by itself, however, is insufficient to justify denying a motion to amend." Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999) (citation omitted). Thus, while this factor weighs against granting leave to amend, the Court must consider it in conjunction with the remaining factors.

   b. *Prejudice*

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003); DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987). Relator argues there is no prejudice to Defendant because Defendant was on notice of the new theory since 2017, and because allowing amendment would not require a reopening of discovery.

First, Relator argues that questions relating to the Seller Relationship Issue were asked at both Relator's July 2, 2018 deposition and Defendant's July 12, 2018 deposition. Relator specifically points out that "Topic Number 8" on Relator's July 2, 2018 deposition concerned Defendant's communications with its customs brokers regarding whether to state that Defendant was related to the seller on the 7501 forms.

10

FAC Reply at 5:22-27.  However, in deposing Relator, Defendant's counsel asked "only a few minutes of questions" regarding the Seller Relationship Issue, during which Relator denied any knowledge of the 7501 form, could not say he knew anything of the "relationship" portion of the form, and admitted that this new issue was unrelated to his original Complaint. Declaration of John Kinn ISO Def.'s Opp'n to FAC Appl. ("FAC Kinn Decl.") ¶ 5, ECF No. 70; Ex. 3 at 307:17-312:10, 319:22-320:18, ECF No. 70-1.  The Court is unconvinced that based upon these answers, Defendant should have been on notice that Relator was intending to pursue the Seller Relationship Issue as a new theory of liability.  If anything, Relator's answers indicate the exact opposite.  Similarly, Relator's counsel only asked a few questions at Defendant's witness deposition regarding this theory.[1]  FAC Kinn Decl. ¶ 4.  Simply because Relator asked questions regarding the Seller Relationship Issue does not necessarily indicate to Defendant that Relator would pursue the issue as a theory of liability, for depositions can last seven

_____

[1] In one instance, Defendant's witness confirmed that he had no involvement with the explanation of whether Defendant was related to the seller, and Relator's counsel moved on to different questioning.  Kinn Decl, Ex. 1 61:2-25, ECF No. 70-1. Later in the same deposition, Defendant's witness was shown a 7501 form and stated he was unaware that the form required information on whether there was a relationship.  Id. at 74:17-75:11.  Defendant's witness then testified that Defendant does not handle "these kinds of things" and relies on its professional customs broker to fill out the forms.  Id. at 75:12-76:22.

hours a day and can cover a wide range of questions that do not end up being material to litigation. Indeed, the vast majority of questioning at deposition focused on the specific, pleaded examples of mislabeling alleged in the original Complaint. See Kinn Decl., Ex. 3 at 224:1-235:24; Ex. 4. The Court finds this insufficient to provide notice to Defendant that Relator intended to bring the Seller Relationship Issue as a legal theory.

Relator also argues that there is no prejudice because no further discovery is needed. Relator points out that in both Defendant's Opposition to Relator's concurrently filed Motion for Partial Summary Judgment, and Defendant's concurrently filed Motion for Judgment on the Pleadings, Defendant has requested the Court to rule on the Seller Relationship Issue as a matter of law based on the evidence that is already before the Court. FAC Reply 3:14-18. Relator further points out that Defendant has already submitted a declaration from its customs broker, and that Relator believes it does not need to depose the broker and that the Court has all the information it needs on the issue. Id. at 3:20-4:13. The Court is not persuaded by Relator's arguments. The concurrently filed Motions were filed on April 26, 2019, the same day as the motion filing deadline in this case. The extent to which Defendant addressed the new theory in both concurrently filed Motions was to primarily argue that the new cause of

action is futile.  Further, Relator is not in the
position to say whether one customs broker declaration
is enough for Defendant to adequately defend this
issue.  Defendant's inclusion of the new theory in its
other two Motions does not indicate that Defendant will
not need any further discovery, but rather it appears
that Defendant addressed the issue to the extent it
could with the information before it at the time to
still abide by the motion filing deadline.  Moreover,
the Government filed a Statement of Interest requesting
that should the Court grant leave to amend, it should
order the FAC sealed for at least sixty days to allow
the Government to investigate the new allegations
because the proposed FAC contains "new allegations"
that are not substantially similar to the original
Complaint.  Government's Statement of Interest 1:13-17,
ECF No. 65.  Not only would this delay trial, but the
Government's Statement also suggests that because there
is a need for investigation given that these new
allegations that are not substantially similar, there
will also be a need to reopen discovery.

Discovery closed on January 18, 2019, and trial is
set for July 9, 2019.  Adding a new theory of liability
at this late stage in litigation would push this trial
out further, and risk the need to reopen discovery.
See Jackson v. Bank of Haw., 902 F.2d 1385, 1388 (9th
Cir. 1990) (citation omitted) ("'Putting the defendants
through the time and expense of continued litigation on

a new theory, with the possibility of additional
discovery, would be manifestly unfair and unduly
prejudicial.'"). Because Relator waited nearly two
years to bring this new theory, after discovery closed
and mere weeks before trial, the Court finds that
prejudice would result if it were to allow amendment.
See Morongo Band of Mission Indians v. Rose, 893 F.2d
1074, 1079 (9th Cir. 1990) (denying request to add new
claims two years later because it would be a "radical
shift" of "tenuous nature" and "inordinate delay").
The Court need not address futility given that undue
delay and the risk of prejudice—the most important
factor—weigh so heavily against allowing amendment.
See Solomon v. North American Life & Cas. Ins. Co., 151
F.3d 1132, 1139 (9th Cir. 1998) (finding a motion "on
the eve of discovery deadline" properly denied because
it would have required reopening discovery, thus
delaying proceedings); Campbell v. Emory Clinic, 166
F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue
delay are inherent in an amendment asserted after the
close of discovery and after dispositive motions have
been filed, briefed, and decided."). Consequently, the
Court **DENIES** Relator's Application to File FAC.

    2. <u>Defendant's Motion for Judgment on the
Pleadings</u>

    Defendant moves for judgment on the pleadings
solely as to Relator's new Seller Relationship theory
he seeks to bring in his proposed FAC. See Def.'s Mot.

re J. on the Pleadings, ECF No. 68.  Because the Court denied Relator's Application to File the FAC, this new claim is not before the Court.  As such, the Court **DENIES as MOOT** Defendant's Motion for Judgment on the Pleadings.

    3.  <u>Relator's Motion for Partial Summary Judgment</u>

    Relator seeks partial summary judgment as to Defendant's liability under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(G).  To establish liability under this section of the FCA, a plaintiff must prove that defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government".  31 U.S.C. § 3729(a)(1)(G).  These types of claims are called "reverse false claims." <u>U.S. ex rel. Cafasso v. General Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1056 (9th Cir. 2011).  The FCA's reverse false claims provision "attempts to provide that fraudulently reducing the amount owed to the government constitutes a false claim." <u>Id.</u> (internal quotation marks omitted).

    Here, Relator alleges a scheme in which Defendant submitted fraudulent Customs 7501 Forms and invoices to CBP that falsely represented the identity and value of Defendant's herbal supplements, in order to be assessed

a lower duty for the import of the materials than was lawfully owed based on the actual identity of the materials.  Compl. ¶¶ 16-20.  As part of the scheme, Relator alleges that once duties were paid and cleared by customs, Defendant's New Jersey office sent emails referred to as "relabeling requests" to Defendant's California offices and warehouses, which attached the proper label for each import with the correct identification and price to replace the fraudulent one. Id. ¶¶ 22, 39-42.

Defendant does not dispute that it has changed labels due to varying reasons, including damaged or ripped labels, incorrect labels, and customer requests. Def.'s Stmt. of Genuine Disputes, ("SGDF") ¶ 4, ECF No. 80; id., Ex. 23, Chen Dep. 26:22-27:3, ECF No. 80-16 (testifying that label change could be China's mistake, damage in transportation, customer has special need, warehouse messed up, etc.).  Defendant does however dispute that it ever intentionally placed a false label onto any imported goods or that Defendant undervalued its imports to avoid customs duties.  Def.'s Opp'n to Rel.'s Mot. re Summ. J. ("MSJ Opp'n") 7:26-28, ECF No. 77; Declaration of John Kinn ISO Def.'s MSJ Opp'n ("Kinn Decl.") 2:5-18, ECF No. 78.  The FCA defines knowingly to mean that a "defendant knew a claim for payment was false, or that it acted with reckless disregard or deliberate indifference as to the truth or falsity of the claim."  United States ex rel. Anita

_Silingo v. WellPoint, Inc._, 904 F.3d 667, 680 (9th Cir. 2018). Relator argues that, at a minimum, Defendant acted with reckless disregard or deliberate indifference that many of its imported products were falsely identified to CBP and that Defendant never notified CBP of these false statements. Rel.'s Mot. re Summ. J. ("Rel.'s MSJ") 9:17-26, ECF No. 67-1. Defendant argues that Relator presents no admissible evidence that it acted knowingly, with deliberate indifference, or reckless disregard. Thus, the crux of this issue turns on whether Relator has shown there is no genuine dispute of material fact that Defendant _knowingly_ submitted false statements under the FCA.

Relator largely rests his case on his own declaration, in which he contends that Shaanxi shipped imports to Defendant's warehouse in Buena Park, California, with false labels and invoices. Rel.'s MSJ Ex. E, Declaration of Travis Kiro ("Kiro Decl.") ¶¶ 10-12, ECF No. 67-8. For example, Relator states that a shipment labeled as containing green tea powder, a "cheap product" in his experience, might actually contain a "very concentrated high-potency extract made from green tea" that is "regularly sold for more than ten times the market price of the non-concentrated powder." _Id._ ¶ 13. Relator provides that during his employment, other invoices listed lower-priced raw materials—such as turmeric, parsley, celery seed, bilberry, white tea, guarana, hibiscus, and griffonia

powder—because they are "relatively cheap", when Defendant was actually importing high-priced extracts such as green coffee bean extract, 5-HTP 98% and 99%, raspberry ketones, reservatrol, and turmeric 95%. <u>Id.</u> ¶¶ 14-15. Additionally, Relator states that he reviewed "hundreds" of the "relabeling requests" that were sent once the duties were paid based on the fraudulent labels as well as Defendant's "Fishbowl computer system," where Defendant tracks the "label-switching scheme". <u>Id.</u> ¶¶ 21-24, 32.

As an initial matter, Defendant objects to Relator's declaration and argues that the Court should strike it as unauthenticated, lacking personal knowledge, and containing impermissible legal conclusions and hearsay statements.[2] Def.'s MSJ Opp'n at 5:22-6:4. Relator offers his declaration as a "non-retained testifying expert report" pursuant to Rule 26(a)(2)(C). Declaration of Cory Fein ISO Summ. J. ("Fein Decl.") ¶ 7, ECF No. 67-2; Kiro Decl. ¶ 3. Federal Rule of Evidence ("FRE") 703 provides that

---

[2] Defendant did not file separate evidentiary objections, but instead includes its evidentiary objections within its SGDF. However, the Court will not address each objection as they are largely "boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded." <u>United States v. HIV Cat Canyon, Inc.</u>, 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016); <u>see also</u> <u>Stonefire Grill, Inc. v. FGF Brands, Inc.</u>, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (refusing to "scrutinize each objection and give a full analysis of identical objections"). Where Defendant does make specific objections, and the Court relies on such evidence, the Court will address Defendant's objections.

"[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Relator states that he has direct, personal knowledge of the alleged scheme through his former employment as Account Manager in Defendant's West Coast office from January to July, 2012, and that as part of his position, he personally saw relabeling take place. Kiro Decl. ¶ 42. Additionally, Relator has worked in the nutraceutical industry from 2001 to present, although he does not submit a resume or detail his experience. Id. ¶ 6.

Defendant argues that Relator lacks personal knowledge regarding Defendant's product pricing or calculation of import duties. SGDF ¶ 3. For example, Defendant points to Relator's deposition, specifically where he was asked how he knows the relabeling was done to change the labels from cheaper to more expensive because the labels do not show a price. Id., Ex. 22, Kiro Dep. 178:6-25, ECF No. 80-15. Relator answered that he could look it up on a price list, but admitted that he had not looked on price lists during the relevant period of time to see if duties were underpaid. Id. at 178:1-10. Defendant further points to several portions of the Declaration of Ying Chen, the lead of operations for Defendant in the United States. Declaration of Ying Chen ISO Def.'s MSJ Opp'n ("Chen Decl."), ECF No. 79. Relator's declaration contains statements that products are "cheap" or

"expensive," but Chen states that products cannot be generalized that way without identifying their specification. Chen Decl. ¶ 12. For example, Bilberry Extract Anthocyanidins UV and Bilberry Extract Anthocyanins HPLC may cost several hundred dollars per kilogram, Bilberry Extract Anthocyanins at a lower percentage HPLC may cost a few hundred dollars per kilogram, but Bilberrry Extract at a simple ratio may cost only a few dollars per kilogram. Id. All are "Bilberry Extract" imports, but the cost depends on specifications, percentages, active ingredients, etc., thus Chen asserts that Relator is too generic by calling products like "Bilberry" a relatively "cheap raw product." Id.

Finally, Defendant argues that Relator's declaration relies on impermissible hearsay statements. Relator states that Jesse Sevilla, the manager of States Logistics, the California warehouse Defendant uses, told Relator that Defendant "routinely asked us to relabel their products; I'm going to say about 60%, or higher, of their shipments were relabeled." Id. ¶ 25. Relator also states that Skipp Silverman, presumably another employee of Defendant, told him how the scheme worked and that the reason was "to evade payment of proper U.S. customs duties," that it was "standard procedure," and the "way it has always been done." Id. ¶ 43. Dick Askinazi from AMS also purportedly explained the relabeling scheme to Relator.

_Id._  Yet nowhere does Relator provide a declaration or any evidence supporting these hearsay statements. Ordinarily, such hearsay statements would not satisfy the requirement of Rule 56(e) that a declaration must "set out facts that would be admissible in evidence". _See Scosche Indus., Inc. v. Visor Gear Inc._, 121 F.3d 675, 681 (9th Cir. 1997) (finding declaration in opposition to summary judgment containing hearsay insufficient).  However, FRE 703 permits hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion.  _See H.I.S.C., Inc. v. Franmar Int'l Imps., Ltd._, No. 3:16-cv-00480-BEN-WVG, 2018 U.S. Dist. LEXIS 214537, at *14 (S.D. Cal. Dec. 19, 2018) (citing _Paddack v. Dave Christensen, Inc._, 745 F.2d 1254, 1261-62 (9th Cir. 1984)).

At this stage, the Court declines to strike Relator's declaration for lack of personal knowledge. The extent of Relator's knowledge and experience in the nutraceutical industry presents a question of fact for the jury in determining the credibility of Relator. _Clicks Billiards, Inc. v. Sixshooters, Inc._, 251 F.3d 1252, 1263 (9th Cir. 2001) ( "[I]ssues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility.").  Further, to the extent Relator is an expert, the hearsay statements do not render his

declaration inadmissible.

That being said, the objections and arguments Defendant brings as to Relator's declaration, primarily through Chen, do raise a genuine issue of material fact as to whether Defendant knowingly mislabeled its shipments to avoid duties. Chen states that he is "not aware of any underpayment of duties" and that "[t]o the extent some imports were mislabeled in China or needed relabeling for other reasons, the prices on the Commercial Invoices reflected the price for the actual product imported." Chen Decl. ¶ 8. Moreover, as previously discussed, Chen points to the exact specifications of the herbal supplements as a factor affecting pricing that he argues Relator does not have adequate knowledge of.

Further, Relator does not specify any actual evidence to support the assertions in his declaration and states his knowledge of the alleged scheme in the form of generalizations and hypothetical examples, while Chen's declaration directly challenges and contradicts Relator's statements. Conclusory or speculative testimony in affidavits or declarations is insufficient at summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Where Relator does mention specific evidence, he cites to his own summary of documents produced in two boxes

by States Logistics.[3]  Kiro Decl. ¶ 25.  Included in
Relator's summary are references to the "relabeling
request" emails Defendant allegedly sent to its
employees.[4]  Relator provides that in the examples
discussed in his summary, the product listed on the
fake label is different (and less expensive) than the
product listed on the correct label placed on the
container after it cleared customs.  Kiro Decl. ¶ 30.

For some relabeling allegations, Relator lays out
for each shipment the "Bill of Lading" date; the "Order
Pick Sheet" number, date, and label title; that an
email directed changing the labels; and the box and
folder number that corresponds to the documents
received from State Logistics.  Kiro Decl. at 15-18.
The majority of Relator's summary, however, lists
instances of relabeling in the form of a one sentence

---

[3] Relator relied upon these documents to form his opinion,
but given the volume of documents, he only submitted a summary to
support his declaration, pursuant to FRE 1006, which provides
that a "proponent may use a summary, chart, or calculation to
prove the content of voluminous writings . . . that cannot be
conveniently examined in court."  Relator made the documents
available to Defendant and will produce them in court if
requested.  Rel.'s Reply at 9:8-22.  For now, Relator provides a
sampling of the State Logistics documents as exhibits to the Fein
Declaration ISO Rel.'s Reply, ECF No. 81-1: (1) Ex. D1, B1F1; (2)
Ex. D2, B1F2; (3) Ex. D3, B1F3; (4) Ex. D4, B1F16; (5) Ex. D5,
B2F15; (6) Ex. D6, B2F16; (7) Ex. D7, B2F19.

[4] During discovery, Defendant failed to produce its emails
containing the "relabeling requests" due to a "regular
destruction policy" by which Defendant's email cloud service
provider is unable to recover emails after fourteen days.  Kinn
Decl. ¶ 8.  Through the use of a subpoena on State Logistics,
Relator was able to retrieve the emails.  Fein Decl. ¶¶ 3-7; id.,
Exs. A-B.

statement with no explanation of which invoices or forms his summary refers to. For example, in his declaration, Relator states that the Fishbowl computer records show that turmeric extract, an "expensive extract", was falsely described as the "much cheaper turmeric powder" to Customs. Id. ¶ 35; see id., Ex. A ¶ 65, B1F7, B2F2, B2F4, B2F6, and B2F9. Relator cites to B1F7, referring to box one, folder seven, but his summary merely provides one line reading "Robinson Pharma Turmeric Powder relabeled as Turmeric extract, relabel instructions in bold." Id. at 22.

Relator's summary of the documents on its own is an insufficient basis to show that there is no genuine issue of material fact as to Defendant's liability. Upon review of the "relabeling request" emails provided to the Court, it appears that each email generally contains the same instruction from Defendant's New Jersey office to "[p]lease remove labels from boxes and replace with attached," with no reason stated as to why. See Reply ISO Rel.'s MSJ, Ex. D1, ECF No. 81-5. Chen testified at deposition that these "relabeling request" emails notified Defendant when there was a shipment mislabeled with "the wrong product name or wrong lot number or the spelling is wrong or sometimes from the warehouse they say, oh, it's broken, then we inform our warehouse to change it." SGDF Ex. 23, Chen. Dep. 16:10-14, ECF No. 80-16. Chen testified that these were not intentional mislabeling, but that

Defendant has "too many shipments, too many products; it's normal they make mistakes." Id. at 17:12-13. The parties dispute the varying reasons for a need to replace the labels, and these emails do not shed light either way. Ultimately, however, whether Defendant knowingly submitted false statements to CBP turns on whether the labels were replaced due to inadvertent mistake as Defendant claims, or as part of a deliberate scheme as Relator alleges.

Defendant submits commercial invoices and 7501 Forms that correspond to Relator's examples. See SGDF, Ex. 11, ECF No. 80:1-4. While the invoices show what Defendant purportedly imported and its price, this evidence does not conclusively establish that what was in fact inside the shipments did not correspond to the labels and descriptions seen on the invoices. Nor do the invoices and 7501 Forms prove that Defendant knowingly mislabeled its imports to receive lower duties. Defendant submitted a table listing which exhibit of Relator's that Defendant's invoice and 7501 form corresponds to, as well as the commercial invoice purchase order price and the price Defendant later sold it for to its customers. At most, this shows that Defendant largely sold the products to its customers at a higher price than the commercial invoice price—some only a difference of a few dollars—but this does not prove that Defendant fraudulently obtained a lower duty. In viewing this evidence in the light most

favorable to Defendant, this could suggest a routine business practice of turning a profit. In fact, Defendant did not always charge customers more than the import price. Chen identifies at least eleven of Relator's examples where Defendant purchased an imported item at a price higher than it sold to its customer. Chen Decl. ¶ 20. And some purchase prices were consistent with the purchase price, for instance, Bilberry Chinese Extract seen in Relator's examples were purchased at prices ranging form $14-16, and Defendant's related sales varied from $14-26. Id. at ¶ 18. According to Chen, to the extent any imports were mislabeled or needed relabeling for other reasons, the prices on the invoices reflected the price for the actual product imported. Chen Decl. ¶ 8. As such, Relator has not shown that no triable issue exists.

Neither does the other evidence Relator relies on sufficiently establish that there is no triable issue. First, Relator points to the deposition of Jennifer Solgonick, an employee of Defendant. However, parts of her deposition call into question the probative value of her testimony. For example, Relator argues that Solgonick testified that Defendant relabeled astragalus as licorice root, but she had actually stated that she could not verify this, or what the warehouse received in that shipment. Rel.'s MSJ, Ex. C, Solgonick Dep., 30:2-33:1, ECF No. 67-6; SGDF ¶¶ 27-33. Additionally, Relator points to the deposition of Christopher

Oesterheld ("Oesterheld"), another employee of Defendant. <u>See</u> Rel.'s MSJ, Ex. B, Oeasterheld Dep., ECF No. 67-5. In the portion Relator specifically cites to, Oesterheld was asked whether Defendant ever notified its customs brokers of a mistake on an import label to correct it, and he answered that he does not have any knowledge of that happening. <u>Id.</u> at 39:14-21. This portion on its own, however, does not tend to prove or disprove that Defendant knowingly mislabeled its imports in the first place. Relator does not provide any information as to Oesterheld's position with Defendant and whether he would be privy to such knowledge.

In sum, Relator has not provided sufficient evidence showing that there is no genuine dispute that Defendant knowingly mislabeled its shipments to pay lower duties to CBP. <u>United States ex rel. Anderson v. Northern Telecom</u>, 52 F.3d 810, 815 (9th Cir. 1995) ("For a qui tam action to survive summary judgment, the relator must produce sufficient evidence to support an inference of knowing fraud."). If Relator does have such evidence, he has failed to point it out to the Court and instead relies on his own generalized statements and speculations. Both parties dispute Defendant's knowledge and intentions, and Relator has not provided evidence refuting Defendant's argument that the only relabeling that occurred was due to mistake, damage, or client request. <u>See U.S. ex rel.</u>

1  Hopper v. Anton, 91 F.3d 1261, 1267 (9th Cir. 1996)

2  ("Innocent mistakes, mere negligent misrepresentations

3  and differences in interpretations are not false

4  certifications under the [FCA]."). What this case

5  appears to boil down to is a question of credibility

6  between Relator's testimony, and Defendant's various

7  witnesses such as Chen—determinations to be made by the

8  jury and not the Court on summary judgment. Soremekun

9  v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir.

10  2007) ("In judging evidence at the summary judgment

11  stage, the court does not make credibility

12  determinations or weigh conflicting evidence."). Thus,

13  a triable issue exists as to whether Defendant

14  *knowingly* imported goods with false labels, and as

15  such, the Court will not reach the issue of

16  materiality. Accordingly, the Court **DENIES** Relator's

17  Motion for Partial Summary Judgment.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

### III. CONCLUSION

Based on the foregoing, the Court: (1) **DENIES** Relator's Application to File FAC [63]; (2) **DENIES as MOOT** Defendant's Motion for Judgment on the Pleadings [68]; and (3) **DENIES** Relator's Motion for Partial Summary Judgment [67].

**IT IS SO ORDERED.**

DATED: June 10, 2019                     s/ RONALD S.W. LEW

                                              **HONORABLE RONALD S.W. LEW**
                                              Senior U.S. District Judge